# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-770V

| | |
|---|---|
| INAH CHOE,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 4, 2025 |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*James Vincent Lopez*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DISMISSING CLAIM[1]

On January 19, 2021, Inah Choe filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on October 7, 2019. Petition at 1.

For the reasons discussed below, I find Petitioner has not established that she suffered the residual effects of her injury for more than six months, and therefore dismissal of the claim is warranted.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Procedural History

Petitioner filed this matter on January 19, 2021 alleging a right-shoulder SIRVA. Respondent filed a Rule 4(c) Report opposing compensation on April 21, 2023. Respondent's Rule 4(c) Report ("Report"), ECF No. 32. Respondent argues that Petitioner cannot meet the Vaccine Act's "severity" requirement. Report at 16-19. Respondent also argues Petitioner cannot meet the Table requirements because she had a pre-existing history of shoulder pain and her pain was not limited to her right shoulder. Report at 12-13.

On October 26, 2023, Petitioner filed a motion for a ruling on the record in favor of the claim. Petitioner's Brief in Support of her "Table" SIRVA Claim ("Mot."), ECF No. 38. Respondent filed a response on December 11, 2023. Respondent's Response to Petitioner's Motion for a Ruling on the Record ("Resp."), ECF No. 39. The matter is ripe for resolution.

## II.    Factual Background

### a. Medical Records Prior to Vaccination

The medical records reveal that Petitioner previously suffered from some other conditions, including chronic right-sided low back pain, right-sided sciatica, irritable bowel syndrome, and endometriosis, among other ailments. Pet. Ex. 1 at 363-364, Pet. Ex. 5 at 101. There are also reports of neck and shoulder pain starting in 2018. On May 29, 2018, for example, Petitioner had physical therapy for leg pain when she also reported "neck pain with tingling and numbness down [bilateral upper extremities] which has been getting worse in the last couple of months." Ex. 7 at 100.

Petitioner began attending physical therapy on June 25, 2018 for neck pain that "sometimes radiates to her [right] elbow and sometimes has tingling in her hands." Ex. 7 63. Between June and July of 2018, Petitioner attended five physical therapy sessions. *Id.* at 21, 27, 32, 63. She also saw her primary care physician ("PCP") for neck and shoulder pain that started sometime in January of February of 2018. Ex. 5 at 471-72. She was diagnosed with trapezius muscle spasms. Ex. 5 at 473. She saw her PCP again on September 13, 2018. Ex. 5 at 354. She tested positive for myalgias and "tight muscles in neck and shoulders". *Id.* at 355.

On November 8, 2018, Petitioner contacted her PCP for chest pain, bilateral shoulder pain, body aches, heart palpitations, and gas pain. Ex. 5 at 308. She next reported arm numbness on December 4, 2018, along with tingling sensation and

2

weakness. *Id.* at 266-70. Petitioner reported panic attacks that caused her to have shortness of breath, heart palpitations, numbness in her arms on May 2, 2019. *Id.* at 131-32. Her bilateral arm weakness was diagnosed as chronic at baseline and "likely due to anxiety." *Id.* at 140.

### b. Vaccination and Subsequent Medical Records

Petitioner received a flu vaccine on October 7, 2019. Ex. 4 at 2, Ex. 1 at 307. The vaccine record does not indicate the site of administration.

On October 16, 2019, she reported "sharp shooting pain" in her right arm after her fu shot. Ex. 1 at 341. Petitioner noted that the flu shot was given higher up and closer to her shoulder. Further, she had soreness after the shot, "which went away and the arm pain started a couple of days after." *Id.* She again reported "discomfort" from the flu shot on October 23, 2019. She was offered an in-person appointment but was unable to attend. *Id.* at 336.

Petitioner spoke to a registered nurse on October 25, 2019, reporting an anxiety attack and bilateral arm pain "but more on the [right] side." Ex. 1 at 337. The nurse noted Petitioner "continues to have the [right] arm pain which she states could be [related to] the flu shot but is unsure." *Id.*

On October 28, 2019, Petitioner saw her PCP for right shoulder pain. Ex. 1 at 307. She reported immediate onset of pain over the right shoulder and arm weakness with reduced range of motion, after receiving influenza vaccine on 10/7/2019…" that "radiated down and outwards … and occasionally down the forearm." *Id.* at 341. It was noted that Petitioner had a history of right shoulder "popping" sensation that increased after the injection and was associated with shooting pain. *Id.* An exam showed slighted reduced range of motion. The PCP noted that her pain "could be" related to her vaccine administration. *Id.* at 308.

Petitioner began physical therapy on November 4, 2019. Ex. 2 at 17. She attended four sessions between November 4, 2019, and December 16, 2019. *Id.* at 2-17. By December 16, 2019, Petitioner reported her shoulder "continues to feel better." *Id.* at 4.

Petitioner next saw her PCP on November 26, 2019, for multiple complaints including chest pain, acid reflux, IBS, endometriosis, anxiety, and depression. Ex. 1 at 241-44. Petitioner was noted to have "right sides body pain (onset a few days ago)." *Id.* at 244. There are no complaints of right shoulder pain, however the nursing notes report "neck and shoulder pain, which Petitioner attributed to her anxiety." *Id.* at 248.

On December 31, 2019, Petitioner returned to her PCP for multiple medical issues including "acute pain of right shoulder." Ex. 1 at 216-17. Her symptoms were noted as "improved" with "increased [range of motion]" in her shoulder. *Id.* at 217. A physical exam of her right shoulder was "normal". *Id.* at 218.

Between December 31, 2019 and September 21, 2020, Petitioner saw her PCP three times and contacted medical providers six times, but never reported shoulder pain. *See, e.g.* Ex. 1 at 161 (record from April 10, 2020, speaking to a nurse about possible withdrawal symptoms from medication and noting increased anxiety along with "dull pain/tingling in arms bilaterally"); *Id.* at 152 (record from April 20, 2020, for anxiety and increased irritability); *Id.* at 105-06 (record from July 21, 2020 for enlarged vein and suspected insect bite); Ex. 7 at 84 (record from August 11, 2020, for "chest flutters").

Additionally, Petitioner reported engage in strenuous exercises between December 31, 2019 and September 21, 2020. Ex. 1 at 99 (reporting possible muscle strain after exercising upper body on July 29, 2020); *Id.* at 117 (seeking care for sharp chest pain following "full body workout" two days prior).

On September 21, 2020, Petitioner had a telemedicine appointment with her PCP to discuss numerous complaints, including right shoulder pain. Ex. 1 at 50-52. She reported that she still experienced pain in her shoulder on most days, but the pain was not significantly bothersome. *Id.* at 50-51.

Petitioner saw an orthopedic surgeon on September 29, 2020, for right shoulder pain. Ex. 3 at 4. She reported she thought her arm pain would improve, but it "kept getting worse" and was "easily provoked." *Id.* X-rays were normal, and her range of motion was equal to her left shoulder. *Id.* at 6. The surgeon noted that Petitioner "improved gradually over the course of the last year" and "though the progress is slow, we think it is likely that her symptoms []will continue to improve with time." *Id.*

### III.     Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[3] With regard to

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

severity, a petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. Section 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

The parties dispute whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

Because Petitioner received the flu vaccine on October 7, 2019, she must demonstrate by preponderant evidence that her residual symptoms continued at least through April 7, 2020 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred over approximately three months, or until December 31, 2019. Ex. 1 at 217. At that time, Petitioner's symptoms were noted as improved and an examination of her right shoulder was "normal". *Id.* at 217-18.

There are subsequently no records containing reference to shoulder pain for nine months, or until September 21, 2020. Ex. 1 at 50-52. Petitioner does not provide an explanation as to why she did not seek treatment for the nine-month period between January and September of 2020. Indeed, she attended medical appointments during this time, but did not describe any ongoing shoulder pain or range of motion issues despite due opportunity. *See, e.g.* Ex. 1 at 161 (record from April 10, 2020, speaking to a nurse about possible withdrawal symptoms from medication and noting increased anxiety along with "dull pain/tingling in arms bilaterally"); *Id.* at 152 (record from April 20, 2020, for anxiety and increased irritability); *Id.* at 105-06 (record from July 21, 2020 for enlarged vein and suspected insect bite); Ex. 7 at 84 (record from August 11, 2020, for "chest flutters").

6

As Respondent argues, the evidence only demonstrates a short period of limited treatment that lead to improvement in December 2019 – and with no indication of a plan to continue treatment into 2020. This was followed by a *265-day gap* in describing shoulder pain (between December 31, 2019 and September 21, 2020). And during this lengthy period of time, Petitioner did not raise any ongoing issues with shoulder pain. *Id.* at 17. Yet there are reports of Petitioner engaging in "strenuous" exercises in this treatment gap period. Ex. 1 at 99, 103, 117.

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. Petitioner ceased treatment well before the six month "cut off," and then delayed follow-up for nine months after, despite due opportunity to seek care for a chronic and persistent problem. And even at the end of the initial three-month treatment period, Petitioner's symptoms had nearly resolved. Ex. 1 at 217. Such a fact pattern overall preponderates in favor of a finding that any initial vaccine issues had ended before the severity deadline, and then that intervening factors are more likely explanatory of Petitioner's subsequent shoulder complaints.

## Conclusion

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** her claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.